## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KRISTOPHER ERIC BENJAMIN, )
)
    Petitioner, ) Civil Action No. 16-268
)
    v. )
) Magistrate Judge Maureen P. Kelly
SUPERINTENDENT THOMAS McGINLEY; )
ALLEGHENY COUNTY OFFICE OF DISTRICT )
ATTORNEY, STEPHEN A ZAPPALA, JR.; and )
THE ATTORNEY GENERAL OF THE STATE )
OF PENNSYLVANIA, )
)
    Respondents. )

## <u>MEMORANDUM OPINION</u>

Kristopher Eric Benjamin ("Petitioner"), has filed this pro se Petition Under 28 U.S.C. §
2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 2,
seeking to attack his state court convictions for first degree murder, kidnapping, abuse of a
corpse and criminal conspiracy. Petitioner was sentenced to life in prison without parole for the
first-degree murder conviction and consecutive periods of 4 to 8 years for kidnapping, 1 to 2
years for abuse of a corpse and 4 to 8 years for criminal conspiracy.

For the reasons that follow, the Petition will be denied because none of the four grounds
for relief merits the grant of federal habeas relief. Furthermore, because jurists of reason would
not find this disposition of the Petition debatable, a certificate of appealability will also be
denied.

# I. FACTUAL BACKGROUND

The Pennsylvania Superior Court recited the factual background as follows:

In the early summer of 2009 Amy Kucsmas (victim) was actively involved in daily drug seeking behavior in the Mt. Oliver and Carrick sections of Allegheny County. In late June or early July[,] Kucsmas spent several days in the apartment of Timothy Brunner. Brunner's residence was apartment number two (2) of a four (4) unit building located in Mt. Oliver, and at that time he was residing there with his girlfriend, Ceira Brown. Kristopher Benjamin was a friend and former co-worker of Brunner and lived in that same apartment building—apartment number four (4), which was located above Brunner's apartment. Shortly after Kucsmas began staying at Brunner's apartment she "disappeared," taking approximately $200 of Brunner's money as well as his photo identification card (ID).

In the evening of July 11, 2009, Brunner, Benjamin and Brown went to the Hazelwood section of the City of Pittsburgh. In the early morning hours of July12th they were returning to their Mt. Oliver apartment building when Benjamin saw Kucsmas walking along Brownsville Road in the Carrick section of the city. They were traveling in a pick-up truck driven by Benjamin that belonged to a neighbor James House. Upon observing Kucsmas, Benjamin stated, "Fucking Amy", and pulled the truck over. Brunner and Benjamin got out of the truck and both men angrily confronted Kucsmas about the stolen money and ID. Kucsmas denied taking the money and eventually became so frightened during the confrontation that she urinated on herself. Brunner took Kucsmas' purse and searched through it until he found the ID that had been stolen.

Once Brunner discovered his ID, he and Benjamin told Kucsmas that she was going with them, and they began pulling her toward the truck. Kucsmas initially resisted, but Brunner assured her that everything would be okay and that she should come home with them; Kucsmas ceased her resistance and got into the truck, followed by Brunner and Benjamin.

Benjamin drove to an isolated and hilly area of a nearby park where Kucsmas was ordered out of the truck. Brunner and Benjamin again angrily confronted Kucsmas about the money and repayment, threatening to throw her over the hill. Kucsmas was scared and crying, assuring the men that she would pay the money back. Kucsmas was ordered back into the truck whereupon they drove back to their apartment building.

Once there Brown was ordered by Brunner to take Kucsmas by the hand to prevent her from fleeing, and Kucsmas was escorted to Brunner's apartment by

Brunner, Benjamin, and Brown. Once in the living room, Benjamin began yelling at Kucsmas about the money and made her take off her clothes whereupon he retrieved $60 from her "private area", which in turn was given to Brunner. Brunner, now armed with a handgun, and Benjamin begin to beat and yell at Kucsmas. During this time Brunner cocked the weapon and fired a shot into the floor of the apartment. Brown retreated to her bedroom, but heard Brunner and Benjamin continue the beating, as well as Kucsmas pleading with the two men to stop.

Eventually the beating stopped and Kucsmas was ordered to go to the bathroom and shower. While Kucsmas was in the bathroom Brunner and Benjamin had a discussion regarding the serious nature of the injuries they had inflicted on her, and they came to an agreement that she could not leave the apartment because of that.

When Kucsmas finished showering Brown witnessed Brunner go into the bathroom and help Kucsmas out of the shower. As Kucsmas began to walk out of the bathroom Brown saw Brunner put his arm around her neck from behind, and Benjamin approach her from the front. Brown then put her head under the covers of her bed, but she heard Kucsmas struggling and gasping for air. Benjamin punched Kucsmas in the head, which knocked her to the bathroom floor. As she lay there Benjamin stomped on her chest, and bloody foam oozed out of her mouth and nose. Brown took her head out from under the covers and saw Kucsmas laying motionless on the bathroom floor with Brunner and Benjamin standing around her. Brunner and Benjamin picked Kucsmas up and laid her on the floor in front of Brown's bed. Brown was ordered to go outside and make certain that no one was around.

Brunner went to the basement of the building and returned with a roll of carpet. Brunner and Benjamin rolled Kucsmas['s] body in the carpet and placed her in the back of the pick-up truck. At Benjamin's suggestion they then drove to Hunter Park in Wilkinsburg Borough where the body was left in a weeded/wooded area. Benjamin was familiar with this area because he grew up nearby.

When Brunner returned to his apartment he awakened Brown and told her that they had left Kucsmas behind a dumpster, and he planned to go back and burn the body. Brown was instructed to clean up some blood spots on the living room carpet, as well as some pieces of cut carpet from that which Kucsmas['s] body had been wrapped in. Brunner instructed Brown that if she were ever questioned by the police, that she was to acknowledge the confrontation with Kucsmas on the street and their return with her to the apartment building, but to inform the police that upon their return they went their separate ways and Kucsmas never went into Brunner's apartment.

On July 23, 2009[,] a tree cutting crew was dumping wood chips at Hunter Park when they discovered the carpet and partially decomposed body of Amy Kucsmas dumped by Brunner and Benjamin eleven (11) days earlier. The medical examiner was not able to determine the exact cause of death due to the advanced stage of decomposition, however there were multiple areas of blunt force trauma to the body including broken ribs and head trauma. Given all the circumstances presented, including the trauma to the body and where and how the body was found, the pathologist concluded that the manner of death was homicide.

* * *

Benjamin was charged by Criminal Information (200913466) with one count each of: Criminal Homicide; Kidnapping; Abuse of Corpse; and Criminal Conspiracy. Benjamin filed a pre-trial motion to sever his case from that of co-defendant Timothy Brunner (CC 200913465) which was denied by the Trial Court.

[Benjamin] proceeded to a jury trial on April 7, 2010, and on April 14, 2010[,] Benjamin was convicted of First Degree Murder, Kidnapping, Abuse of Corpse, and Criminal Conspiracy (Kidnapping and Abuse of Corpse).

On April 22, 2010, [Benjamin] was sentenced to a life sentence at the charge of First Degree Murder, and consecutive periods of incarceration of five (5) to ten (10) years (Kidnapping), one (1) to two (2) years (Abuse of Corpse), five (5) to ten (10) years (Criminal Conspiracy).

[Benjamin] filed a post sentence motion which was denied.... [1]

---

[1] After Benjamin filed the notice of appeal on October 27, 2010, trial counsel submitted a motion for leave to withdraw, which we granted to the extent that it ordered the trial court to conduct a hearing pursuant to *Commonwealth v. Grazier,* 713 A.3d 81 (Pa. 1998), before transmitting the certified record to this Court. Appellant also filed a motion to proceed *pro se* and for appointment of standby counsel on July 26, 2011. On September 29, 2011, the trial court held a hearing on the matter and ruled that the *Grazier* standard was met, as Appellant had made a knowing, intelligent, and voluntary decision to represent himself on appeal. Counsel was permitted to withdraw, and standby counsel was appointed.

Com. v. Benjamin, No. 1182 WDA 2014, 2015 WL 6114490, at *1 – 3 (Pa. Super. Ct. July 31, 2015) (quoting Com. v. Benjamin, 1689 WDA 2010, 68 A.3d 374 (Pa. Super. filed February 28, 2013) (unpublished memorandum at 1–5)).

We note that Petitioner and his co-defendant, Timothy Brunner were tried together. Petitioner took the stand and testified as to an alibi defense, asserting that he was not in Brunner's apartment at the time the victim was killed (contrary to the testimony of both Brunner and Brunner's girlfriend, Ceira Brown, both of whom placed Petitioner in the apartment and described his role in the killing of the victim). On the stand, Petitioner testified that rather than being present in the apartment during the murder, he was out selling drugs and only came back in the morning after the murder was completed and ultimately helped his friend, Brunner, dispose of the body, which was rolled up in the carpet, by driving Brunner and the body to the place where they ultimately dumped the victim's body.

## II. PROCEDURAL HISTORY

### A. State Court Procedural History

After Petitioner proceeded pro se on direct appeal, the Superior Court affirmed the judgment of sentence on February 28, 2013. ECF No. 13-3 at 1 – 17. Petitioner thereafter filed a Petition for Allowance of Appeal, which the Pennsylvania Supreme Court denied.[1] Petitioner then filed a pro se Post Conviction Relief Act ("PCRA") Petition. He also filed a motion to proceed pro se and requested standby counsel. A *Grazier* hearing was conducted at which time the PCRA trial court found that Petitioner waived his state law right to counsel. Standby counsel was appointed. The PCRA petition was dismissed on June 25, 2014. ECF No. 13-1 at 14 – 15.

---

[1] In the Answer, Respondents attach as Exhibit No. 6, what they describe as the Docket Sheet for Petitioner's pro se Petition for Allowance of Appeal filed at 143 WAL 2013. ECF No. 13 at 2 – 3. However, Exhibit No. 6 is actually the docket sheet for the Superior Court appeal in Petitioner's post conviction relief act proceedings. ECF No. 13-3 at 18 – 22. In fact, it is Exhibit No. 7 that is the docket sheet for the pro se Petition for Allowance of Appeal filed in 143 WAL 2013 on direct appeal. ECF No. 13-3 at 23 – 25.

Petitioner filed an appeal to the Pennsylvania Superior Court. The trial court issued its short opinion in support of the denial of PCRA relief. ECF No. 13-3 at 26 – 29. The Superior Court affirmed the denial of relief. ECF No. 13-5 at 1 – 15. Thereafter, Petitioner did not file a Petition for Allowance of Appeal to the Pennsylvania Supreme Court.

### B. Federal Court Procedural History

Although Petitioner filed a Motion for Leave to Proceed In Forma Pauperis, ECF No. 1, the Court denied the Motion because Petitioner paid the filing fee. ECF No. 4. Petitioner filed his pro se Petition, ECF No. 2.

In the Petition, Petitioner raises four Grounds for Relief:

**GROUND ONE**: THAT THE PA COURTS RULING REGARDING PETITIONER'S JURY INSTRUCTION CHALLENGE IS AN ERRONEOUS DETERMINATION IN LIGHT OF THE FACTS PRESENTED AS CLAIM WAS NOT WAIVED OR OTHERWISE PROCEDURALLY DEFAULTED; THE PA COURTS RULING IS CONTRARY TO U.S. SUPREME COURT PRECEDENT, AND AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDING, AND PETITIONER IS ENTITLED TO **DE NOVO** REVIEW OF THE CLAIM PRESENTED TO THE PA STATE COURTS.

ECF No. 2 at 5 - 6.

**GROUND TWO**:  THE PA STATE COURTS UNREASONABLY DETERMINED THAT THE CERTIFIED TRIAL TRANSCRIPT IS ACCURATE IN LIGHT OF THE FACTS PRESENTED TO THE STATE COURT WHERE PETITIONER BENJAMIN CLAIMS THAT HE WAS DENIED DUE PROCESS OF LAW AND MEANINGFUL APPELLATE REVIEW THROUGH ILLEGAL ALTERATION OF TRIAL TRANSCRIPT BY GOVERNMENT OFFICIALS.

Id. at 8 - 9.

**GROUND THREE**:  THE STATE COURT UNREASONABLY DETERMINED THAT TRIAL COUNSEL MADE A STRATEGIC OR TACTICAL DECISION WITHIN THE PARAMETERS OF CONSTITUTIONALLY EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL SUBMITTED/DECLARED TO THE JURY THAT THEY HAD BEEN PRESENTED WITH SPECIFIC NONEXISTENT TESTIMONY OF AND BY COMMONWEALTH WITNESS DREWERY DURING

6

COUNSEL'S CLOSING ARGUMENT THEREBY RUINING THE CREDIBILITY OF THE DEFENSE IN ITS ENTIRETY IN A CASE WITH NO OVERWHELMING EVIDENCE OF GUILT SUCH THAT THERE IS A REASONABLE PROBABILITY THAT BUT FOR COUNSEL'S ATTEMPT TO MISLEAD THE FACTFINDER THAT THE RESULT OF THE PROCEEDING WOULD HAVE BEEN DIFFERENT.

Id. at 10 - 11.

**GROUND FOUR**: THE PA STATE COURT UNREASONABLY PRECLUDED PETITIONER BENJAMIN FROM RECORD DEVELOPMENT AS TO TRIAL COUNSEL'S TACTICS, STRATEGY AND REASONING VIA. [sic] AN EVIDENTIARY HEARING IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURTS AS AN EVIDENTIARY HEARING SHOULD HAVE BEEN HELD REGARDING PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL (GROUND THREE), AS THE RECORD REFLECTS COUNSEL'S ACT OF COMMISSION WITHOUT THE REQUISITE RECORD SUPPORT RELEVANT THERETO THEREBY PRECLUDING MEANINGFUL APPELLATE REVIEW, DUE PROCESS OF LAW, AND THE OPPORTUNITY FOR RECORD DEVELOPMENT UPON PETITIONER BENJAMIN'S SUBSTANTIAL SHOWING OF CONSTITUTIONALLY DEFICIENT ASSISTANCE AND AVAILABILITY OF TRIAL COUNSEL'S TESTIMONY NECESSARY TO ESTABLISH FACTUAL FINDINGS UNDER STRICKLAND'S PERFORMANCE AND PREJUDICE PRONGS.

Id. at 13 - 14.

Petitioner also filed a Memorandum of Law in Support of Relief Requested Pursuant to

28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. ECF No. 3. Respondents filed an Answer

[to] Petition For Writ of Habeas Corpus in which they denied Petitioner was entitled to any relief

and attached to the Answer photocopies of portions of the state court record. ECF No. 13.

Respondents also caused the original state court trial record to be transmitted to the Clerk's

Office. Petitioner filed Objections to the Answer, claiming that the Respondents failed to

comply with certain rules governing the Answer. ECF No. 14. Petitioner also filed a Traverse

in Response to Commonwealth/Respondent Answer. ECF No. 18.

In addition, Petitioner filed a Motion for Evidentiary Hearing and a Motion to Compel

Respondent to file record material. ECF Nos. 17 and 19. The Court ordered Respondents to file

responses to the two motions. ECF No. 20. Respondents filed their two Responses. ECF Nos. 21 and 22. Petitioner filed what he termed "Objections" to both of the Respondents' Responses. ECF Nos. 23 and 24. The Court denied both motions. ECF No. 25.

All parties have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge. ECF Nos. 8 and 12.

## III. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

8

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## IV. DISCUSSION

### A. Ground One Does Not Merit Relief.

#### 1. Underlying facts

In Ground One, Petitioner challenges a jury instruction given to the jury. Specifically, the prosecution requested the following instruction:

> 6. (1) There was evidence tending to show that a statement which was incriminating in nature and which naturally called for a denial was made in the presence and hearing of the defendant and that the defendant did not challenge or contradict the statement although he had an opportunity to do so and had the liberty to speak. I am speaking of Ceira Brown concerning conversations between the two defendants concerning the crimes against Amy Kucsmas.

State Court Record, "Commonwealth's Requested Points for Charge," filed 4/12/2010, Marked as Appellate Document 8, at ¶ 6(1).

At the conference addressing the requested points for charge, which was held on the record in the courtroom, the trial court indicated that "[w]ell I'm not going to give that particular instruction as stated and/or requested. When I charge in terms of the conspiracy, the act, they act like partners, they are responsible for the other person's crime, I'll give a short explanation that you may also find statements during the course of the conspiracy and in furtherance of that conspiracy come within the same ambit." State Court Trial Transcript at 917, lines 3 – 11. Notwithstanding this statement by the trial court, when the trial court read the instructions to the

9

jury, the trial court did, in fact, give to the jury the Commonwealth's Requested Point for Charge No. 6 (1) verbatim.[2]

The state courts found that Petitioner waived this claim because although Petitioner's counsel objected to the instruction after it was given,[3] the trial court gave a curative instruction as follows:

> THE COURT: All right. Ladies and gentlemen, I have been requested to clarify one matter, which I'll gladly do. One of the instructions that I gave you was that there was evidence tending to show that a statement which was incriminating in nature and which would naturally call for a denial was made in the presence or hearing of the defendant and the defendant did not challenge or contradict that statement although he had an opportunity to do so and had the liberty to speak. And that was during the course of testimony of Ceira Brown, when the parties were free to argue the importance and deny the statement was actually made.

---

[2] The trial judge gave the following instruction to the jury:

> Now, there was evidence tending to show that a statement which was incriminating in nature and would naturally call for denial was made in the presence and hearing of the defendant, and that defendant did not challenge or contradict the statement although he had an opportunity to do so and had the liberty to speak; and that is regarding the testimony of Ceira Brown as to conversations between the two defendants concerning the alleged crimes against Amy Kucsmas.

State Court Trial Transcript at 1105, lines 10 - 20.

[3] Petitioner's trial attorney objected, and noted that she had thought the trial judge indicated that he would not give Instruction No. 6. Specifically, she objected as follows:

> THE COURT: Okay. Well, do you object to that?
>
> MS. BRESTENSKY: Yes. Actually, the only objection I do have – and this is for the record – my client's specific defense was that he was no present when this alleged statement that she fought hard was made, so therefore he would not have had the opportunity to say I don't know, or to voluntarily reject that statement by his co-defendant. That's the objection that I have.

State Court Trial Transcript at 1144, lines 1 - 10.

But of course in Mr. Benjamin's instance, he has raised a defense of alibi. And if you find that in fact he was not present when such statement or statements were made, then of course he had no opportunity to deny it, and the instruction I gave you in conjunction with that would of course not apply.

MS. BRESTENSKY: Thank you.

THE COURT: Anything else?

MS. BRESTENSKY: Nothing further.

State Court Trial Transcript at 1144, lines 23 – 25, and at 1145, lines 1 – 20.

Because Petitioner's trial counsel indicated satisfaction with the curative instruction and given that no further objection was made to the trial court concerning the instruction, any issue with respect to the allegedly erroneous instruction was waived according to the state courts' interpretation of Pa. R. Crim. P. 647.[4]

---

[4] Pa. R. Crim. P. 647 provided at the time of Petitioner's trial and still does provide as follows:

(A) Before the taking of evidence, the trial judge shall give instructions to the jurors as provided in Rule 626.
(B) Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties. Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed.
(C) No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury.
(D) After the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge in the presence of all parties, except that the defendant's absence without cause shall not preclude proceeding, as provided in Rule 602.

(... footnote continued)

## 2. Legal discussion of Ground One.

### a. Construing state law differently from federal law does not merit relief.

In his Ground One, Petitioner asserts that the state courts' construction of Pa. R. Crim. P. 647 is contrary to United States Supreme Court's construction of the analogous Fed. R. Crim. P. 30.[5] Petitioner apparently makes such an argument to bring himself within AEDPA's standard of review. Petitioner's argument both misses the point and is unavailing. Even if there is contradiction between the state courts' construction of the state rule of procedure and the federal courts' construction of the analogous federal rule of criminal procedure, such would not be sufficient to meet his burden under the AEDPA. The analysis under the AEDPA requires that

---

(E) The trial judge may give any other instructions to the jury before the taking of evidence or at anytime during the trial as the judge deems necessary and appropriate for the jury's guidance in hearing the case.

Pa. R. Crim. P. 647.

[5] Fed. R. Crim P. 30 provides as follows:

(a) In General. Any party may request in writing that the court instruct the jury on the law as specified in the request. The request must be made at the close of the evidence or at any earlier time that the court reasonably sets. When the request is made, the requesting party must furnish a copy to every other party.
(b) Ruling on a Request. The court must inform the parties before closing arguments how it intends to rule on the requested instructions.
(c) Time for Giving Instructions. The court may instruct the jury before or after the arguments are completed, or at both times.
(d) Objections to Instructions. A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. An opportunity must be given to object out of the jury's hearing and, on request, out of the jury's presence. Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).

the state courts contradict or unreasonably apply federal law as construed by the United States Supreme Court. It is of no significance for federal habeas relief if state courts "wrongly" construe a state statute or state law because federal habeas relief is solely reserved for violations of federal law. Sawyer v. Drioux, 1:CV-12-1269, 2013 WL 5755428, at *2 (M.D. Pa. Oct. 23, 2013) ("Finally, federal habeas relief is only available for violations of federal law, not state law. *Swarthout v. Cooke*, —— U.S. ——, ——, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011). As stated in 28 U.S.C. § 2254(a), the petitioner's 'custody' must be 'in violation of the Constitution or laws or treaties of the United States.'"), *aff'd sub nom.*, Sawyer v. Superintendent Muncy SCI, 619 F. App'x 163 (3d Cir. 2015). And this is true even if the language of the state law and federal law are identical as state courts are not bound by federal courts' construction of federal laws that are analogous or even identical to state laws. Two Rivers Terminal, L.P. v. Chevron USA, Inc., 96 F. Supp. 2d 426, 429 (M.D. Pa. 2000) ("Our conclusion that *Hallstrom* did not confer jurisdictional significance on the statutory language, makes it easy to also reject the defendant's other contention, that *Hallstrom* controls the interpretation of the state notice provisions. Because federal courts do not have the power to authoritatively construe state legislation, *see United States v. Thirty–Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); *Virginia Society For Human Life, Inc. v. Caldwell*, 152 F.3d 268, 270 (4th Cir. 1998), state courts are not bound in the interpretation of their own statutes by federal construction of similar federal statutes."). See also Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) ("the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA"), *superseded by statute on other grounds as stated in*, Jakomas v. City of Pittsburgh, 342 F. Supp. 3d 632 (W.D. Pa. 2018).

### b. The curative instruction was adequate to preserve the alibi defense.

Furthermore, Petitioner's argument is simply not clear here. He could be arguing one of two distinct issues. One argument is that the trial court erred in giving the instruction as he did, asserting that it was error to give such an instruction when his defense was an alibi defense meaning he could not have been present to deny any statement made in his absence. If that is Petitioner's argument, then assuming the giving of such instruction in isolation was error, the Court's follow-up curative instruction indeed cured any wrongful implication and required the jury to first find that Petitioner was present when the statement was made before they could apply the failure to deny the statement as evidence.

### c. There was no prejudice from giving an instruction which the trial court said it would not give.

The second argument that Petitioner also seems to be making is that the error occurred by the fact that the trial judge indicated that he would not give the instruction "as stated and/or as requested" by the prosecution but then the trial judge went on to do exactly that. We note that the trial judge made this statement that he would not give the requested instruction before Petitioner's defense counsel made her closing arguments. Petitioner herein argues that:

> giving this Commonwealth requested instruction after informing the defense that this specific instruction would not be given effectively circumvents the reasoning and protections afforded by **Pa.R. Crim. P., Rule 647** (Pennsylvania's counterpart to **Fed.R. Crim. Proc., Rule 30**.) Petitioner Benjamin contends that the trial court's misleading indication, (that Jury Instruction #6 would not be given), infringed upon his right to Due Process of Law, infringed upon his right to a fair trial, impaired the effectiveness of defense counsel's closing argument, and caused Petitioner Benjamin to suffer actual prejudice as a result thereof. Compare **BRIEF FOR APPELLANT AT 1689 WDA 2010, Pgs. 39-49.**

ECF No. 3 at 8.

Petitioner did in fact make this very argument to the state courts. Appellant's Brief on Direct Appeal, ECF No. 13-2 at 50 - 59. We construe this argument to be that because the trial court stated he would not give the instruction but then gave the instruction to be an argument that Petitioner was denied substantive due process or fundamental fairness in the trial. We are not persuaded even were we to review this claim *de novo*.

As explained by this Court in another case:

> A claim that one was denied substantive "due process" is a claim that one was denied "fundamental fairness." *See Riggins v. Nevada*, 504 U.S. 127, 149 (1992)("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial,' *Spencer v. Texas*, 385 U.S. 554, 563-564 (1967)[.]"); *Lisenba v. California*, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is ... to prevent fundamental unfairness"); *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a claim that an ... error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial"). Because the guideposts for decision-making under the rubric of due process are lacking, the United States Supreme Court has cautioned that:

>> In the field of criminal law, we "have defined the category of infractions that violate 'fundamental fairness' very narrowly" based on the recognition that, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Dowling v. United States*, 493 U.S. 342, 352 (1990). The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order.

*Medina v. California*, 505 U.S. 437, 443 (1992) (some citations omitted).

> To establish a substantive due process claim, a petitioner must show both that there was some fundamental error and a reasonable likelihood of prejudice resulting therefrom. *See Fadiga v. Atty. Gen. U.S.A.*, 488 F.3d 142, 158 (3d Cir. 2007) ("A showing of fundamental unfairness in the context faced by the *Charleswell* court required 'both that some fundamental error occurred and that as a result of that fundamental error [the alien] suffered prejudice.'") (quoting *United States v. Charleswell*, 456 F.3d 347, 358 (3d Cir. 2006)).

Moreover, prejudice in the substantive due process criminal trial context means the "trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).

Cunningham v. Wenerowicz, CV 15-1054, 2017 WL 6388276, at *7 (W.D. Pa. Dec. 14, 2017), *certificate of appealability den.*, C.A. 17-3813 (3d Cir. 4/5/2018).

In the present case, Petitioner has failed to carry his burden to show that he was prejudiced for purposes of succeeding on a substantive due process claim. In light of the overwhelming evidence of his guilt,[6] the trial judge's statement that he would not give an instruction as requested and then gave the requested instruction, an instruction that concerned merely adopted admissions, is, in the context of the entire trial record, simply not significant for determining Petitioner's guilt of the crimes. Indeed, Petitioner's counsel did not object on the basis that she was blindsided by the instruction as Petitioner asserts that she was. ECF No. 18 at 7 ("Petitioner was prejudiced where the trial court's misleading indication that this requested instruction would not be given thereby impaired the effectiveness of defense counsel's closing argument, and Petitioner Benjamin's right to a fair trial, hence, affecting Benjamin's defense.").

---

[6] Petitioner repeatedly asserts that there was no overwhelming evidence of his guilt. See, e.g., ECF No. 3 at 19 ("IN A CASE WITH NO OVERWHELMING EVIDENCE OF GUILT"); id. at 21 ("destroyed the credibility of the defense in its entirety thereby rendering the truth-determining process as unreliable due to the actions of trial counsel in a case with no overwhelming evidence of guilt..."); id. at 26 ("what evidentiary record could have prompted defense counsel to submit the exact opposite of what the PA Superior Courts' [sic] own factfinding methods and conclusion resulting therefrom in this case, with no overwhelming evidence of guilt ...."). We disagree. We find that the testimony of record to constitute overwhelming evidence of Petitioner's guilt. This includes the testimony of Petitioner's co-defendant and the co-defendant's girlfriend, who knew Petitioner, both of whom were eye witnesses (and, in the case of Petitioner's co-defendant, was a co-participant) and/or ear witnesses to the crime and testified in vivid detail concerning Petitioner's role in the murder of the victim. If believed, as the jury apparently did, their testimony indeed constitutes overwhelming evidence of Petitioner's guilt.

Petitioner fails to say how his defense counsel's closing argument might have been changed or different had his counsel known that the trial court judge was going to give the Commonwealth's Requested Point for Charge No. 6. Indeed, Respondents argue a lack of prejudice. ECF No. 13 at 17 ("Accordingly, even if the Petitioner had objected at trial to a violation of Rule 647(A), it is difficult to see how he could establish that he suffered the requisite prejudice, given that his closing argument was not affected."). At the very least, Petitioner fails to carry his burden to demonstrate prejudice under these facts. This issue simply does not merit federal habeas relief as Petitioner's trial was certainly not rendered fundamentally unfair by the trial judge saying he was not going to give an instruction concerning adopted admissions as stated but then gave that instruction. In light of the record evidence of Petitioner's guilt, our confidence in the outcome of the trial is not undermined by the giving of this instruction.

### B. Grounds Two and Three are Factually Related and Do Not Merit Relief.

In Ground Two, Petitioner argues that the record does not accurately reflect the testimony of a witness by the name of Andre Drewery. Specifically, Petitioner contends that Drewery testified that Petitioner had no role in the argument about money between the victim and Petitioner's co-defendant Brunner. Petitioner contends that the record does not reflect the "fact" of this alleged testimony by Drewery. Petitioner primarily bases this contention on the fact that in her closing argument to the jury, Petitioner's counsel stated: "And I specifically asked him, well, what was Mr. Benjamin's role in this argument about the money. And he said, No, he didn't have anything to do with the actual argument, that was completely between Amy and Tim Brunner." State Trial Transcript at 994 lines 13-18. Petitioner contends that such alleged testimony appears nowhere in the trial transcript of Drewery's testimony.

Hence, in Ground Two, Petitioner contends that the trial transcript inaccurately recorded Drewery's testimony. The state courts rejected this contention by Petitioner. Therefore, Petitioner then argues in Ground Three that if the record is accurate and the trial transcript accurately recorded Drewery's testimony, then Petitioner's counsel was ineffective for making a representation to the jury concerning what Drewery testified to when, Drewery did not, in fact, testify as Petitioner's counsel had asserted Drewery did in her closing. Petitioner apparently believes he has caught the Respondents between a rock and a hard place. Either he wins on Ground Two, or if he loses Ground Two, then he necessarily wins on Ground Three. See ECF No. 18 at 22 ("Apparently exasperated with Petitioner Benjamin's efforts to point out that one ruling (i.e., veracity of transcript – direct appeal) leaves no room for trial counsel's act of commission [in misstating Drewery's testimony in her closing] as contained in the record (i.e., the ineffective assistance claim – PCRA) ...."). With this factual background, we will now specifically address Grounds Two and Three.

### 1. Ground Two does not merit relief.

In Ground Two, Petitioner raises the same claim that he raised in state court, namely that the trial transcript did not accurately reflect the testimony of witness Drewery with respect to what Petitioner's defense counsel stated in her closing argument relative to Drewery's trial testimony.

As to Ground Two, we note that Petitioner filed a petition with the state trial court to correct the record pursuant to Pa. R. A. P. 1926. By order of court dated November 14, 2011, the trial court denied the Petition stating:

> **AND NOW,** to wit, this 14th day of November, 2011 it is hereby **ORDERED, ADJUDGED,** and **DECREED** that after reviewing Petitioner's *pro se* Petition to Correct the record pursuant to Pa.R.A.P. 1926 is hereby **DENIED.**

> This Court reviewed its' [sic] own notes from the trial and has found that the transcript accurately reflects the testimony. Additionally, this Court contacted the Court Reporter who checked the stenographic notes and found that the transcript accurately reflects that testimony.

ECF No. 13-5 at 16. Before the Superior Court, Petitioner argued that the trial court abused its discretion and denied him due process by denying Petitioner meaningful appellate review on a complete record. ECF No. 13-2 at 23. The Superior Court addressed this issue on direct appeal and held that: "As to issue number one, we discern no abuse of discretion by the trial court as no deficiency in the transcript is apparent. There is no indication that certain trial testimony has been omitted." ECF No. 13-3 at 6 n.1.

We find that the state courts clearly adjudicated this claim on the merits and thus, AEDPA deference applies, notwithstanding Petitioner's arguments to the contrary. ECF No. 18 at 12 – 13. Before this Court, Petitioner asserts that the state courts' factual determination that the trial transcript accurately reflects the testimony actually given is an objectively unreasonable determination of the facts in light of the evidence presented. Petitioner brings this claim as one under 28 U.S.C. § 2254 (d)(2), asserting that the state courts made an unreasonable determination of the fact, in effect, that the transcript accurately recorded the testimony. Both as a matter of logic, given Petitioner's argument, and, as a matter of historical fact, the state courts did adjudicate this claim on the merits and, therefore, Section 2254(d)(2) applies. However, Section 2254(e)(1) also applies, which provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[7] Petitioner herein simply

---

[7] Hence, we reject Petitioner's contention that AEDPA deference does not apply to this historical factual determination by the state courts that the trial transcript accurately reflected the testimony

(... footnote continued)

fails to rebut, by clear and convincing evidence, the presumption of correctness that the transcript accurately recorded the testimony of Andre Drewery. The "evidence" that he points to, which seems to be primarily the closing statement by his own attorney[8] falls woefully short of being "clear and convincing evidence." Instead, what Petitioner points to is his interpretation of "evidence" that may at most infer that the trial transcript was not completely accurate. However, the inference is as equally plausible that his counsel misremembered, exaggerated or even mischaracterized (whether intentionally or unintentionally) the testimony of Andre Drewery, and the record was, in fact, entirely accurate. Given the ambiguity of the record with respect to all of the "evidence" that Petitioner points to, Petitioner fails to carry his burden to show entitlement to relief on the claim that the state courts unreasonably determined that the transcript was

---

of Andre Drewery. ECF No. 18 at 10 ("this litigant submits that the trial court and Pa. Superior Court made 'determinations' based on nothing contained in the record thereby providing nothing to wit the Court applies 'deference' thereto."). We find the implication of Lambert v. Blackwell, 387 F.3d at 239 ("the extent to which a state court provides a 'full and fair hearing' is no longer a threshold requirement [post-AEDPA] before deference applies") to be directly contrary to Petitioner's position. If there is no hearing in the state court as permitted by AEDPA and contemplated by Lambert, then no record is generated in state court, and even if no record is generated, AEDPA deference still applies per Lambert. Contrary to Petitioner, the lack of record evidence does not free this Court from its AEDPA obligation to give deference to state court findings of historical facts even if those findings of fact may be based on evidence *de hors* the record.

[8] Although Petitioner claims that "this litigant reiterates that the closing argument of trial defense counsel was not the only evidence presented to the state court", ECF No. 18 at 16, citing his direct appeal brief, ECF No. 13-2 at 23 – 31, the other "evidence" that he points to, including his own creative, self-serving testimony, characterizing Drewery's testimony as a "new story" ECF No. 13-2 at 30, is simply not persuasive evidence that there is testimony missing from the record and certainly not the clear and convincing evidence required by the AEDPA that rebuts the presumptively correct historical factual finding by the state courts that the trial transcript accurately reflected Drewery's testimony. Petitioner's interpretation of the "evidence" he points to, requires, contrary to the standard of review in habeas, that we count the ambiguous nature of such evidence against the state and against the validity of his conviction. Patrick v. Johnson, NO. CIV.A. 3:98–CV–2291, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000) ("whatever ambiguity exists in the record must be resolved in favor of the trial court's finding.").

accurate. <u>Higgason v. Clark</u>, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent

record supports the judgment; the state receives the benefit of a presumption of regularity and all

reasonable inferences.... His [i.e., habeas Petitioner's] entire position depends on persuading us

that all gaps and ambiguities in the record count against the state. Judgments are presumed valid,

however, and Parke emphasizes that one who seeks collateral relief bears a heavy burden.");

<u>Robinson v. Smith</u>, 451 F. Supp. 1278, 1284 n. 6 (W.D.N.Y.1978) (on habeas review, the court

stated that "In my own independent review of the record, I have resolved ambiguities against

petitioner"); <u>Patrick v. Johnson</u>, NO. CIV.A. 3:98–CV–2291, 2000 WL 1400684, at *9 (N.D.

Tex. Aug. 23, 2000) ("whatever ambiguity exists in the record must be resolved in favor of the

trial court's finding.").[9] Accordingly, Ground Two does not entitle Petitioner to federal habeas

relief.

### 2. Ground Three does not merit relief.

In Ground Three, Petitioner claims that, if in fact the trial transcript is accurate as the

state courts found, then it necessarily follows that his trial counsel was ineffective for saying, in

her closing argument, that witness Drewery testified as she said he did, when there is no record

evidence to support that Drewery testified as she said he did. Hence, he claims his trial counsel

was necessarily ineffective for failing to accurately summarize the evidence of record in her

closing arguments.

---

[9] In light of <u>Higgason, Robinson, Patrick,</u> and AEDPA itself, we emphatically reject Petitioner's
contention that "the habeas Court, is required to do more than simply assume the state courts'
have rendered the proper judgment and then entitle 'deference' thereto." ECF No. 18 at 12. In
fact, we presume the state courts have rendered a constitutional conviction and we give
deference to their adjudication of federal legal issues.

Petitioner also raised this issue in the state courts. ECF No. 13-4 at 20 – 40; 60 - 61. The state courts addressed this claim on the merits. Because the state courts addressed this claim on the merits, it is Petitioner's burden to establish that the Superior Court's decision was either contrary to or an unreasonable application of United States Supreme Court precedent on ineffectiveness or an unreasonable determination of the facts. Because the Superior Court addressed Petitioner's claim of trial counsel's ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA, which results in a doubly deferential standard as explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

Premo v. Moore, 131 S.Ct. 733, 740 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 105 (2011)). Accord Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'"), *rejected on other grounds by*, Dennis v. Sec. Pa. Dept. of Cor., 834 F.3d 263 (3d Cir. 2016) (en banc). The United States Court of Appeals for the Third Circuit

has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

As discussed below, Petitioner has not carried his burden to show that decision of the Pennsylvania Superior Court constituted an unreasonable application of United States Supreme Court precedent concerning ineffective assistance of counsel or an unreasonable determination of the facts either.

Specifically, the Superior Court found that Petitioner failed to establish deficient performance on the part of Petitioner's trial counsel in her closing argument, ECF No. 13-5 at 9 – 13, as well as failed to establish prejudice from the alleged error. Id. at 14. As to the prejudice-prong analysis, the Superior Court held that:

> Not only do we find arguable merit lacking, we also conclude that Appellant cannot establish prejudice. Even if defense counsel's argument was improper, our appellate courts have recognized that improper closing arguments rarely merit a new trial. *See, e.g., Commonwealth v. Thompson,* 660 A.2d 68, 75 (Pa. Super. 1995) ("Improper closing arguments will not often merit a new trial. It is even rarer that a defendant can meet the heavier burden of showing that trial counsel was ineffective for failing to object."). Appellant has not established that but-for the alleged error of counsel, there is a reasonable probability that the outcome of the proceeding would have been different. This is especially true when considered in the context of the ample and credible Commonwealth evidence in support of Appellant's conviction.

Id. Petitioner fails to show that the Superior Court's disposition of the prejudice prong is either contrary to or an unreasonable application of any United States Supreme Court decision in existence at the time the Superior Court rendered its decision. And this is so, even if Petitioner could somehow establish that the Superior Court's disposition of the deficient performance prong was contrary to or an unreasonable application of Supreme Court precedent or constituted

an unreasonable determination of the facts because he would have to also establish the same with respect to the prejudice prong analysis which he clearly does not do and, on this record, could not do. See, e.g., Moody v. Polk, 408 F.3d 141, 147 (4th Cir. 2005) ("because the state court's holding on the issue of performance would alone suffice to defeat Moody's ineffective assistance claim, the decision of the state court would only be contrary to or an unreasonable application of *Strickland* if the state court's evaluation of both prongs were deficient under this standard. Therefore, we review the state court's decision of the performance prong of the *Strickland* inquiry under the deferential AEDPA standard. Because the state court applied the wrong standard to evaluate prejudice, we do not defer to its analysis of that prong but instead review it *de novo*."). Accord Morton v. Sec., Fla. Dept. of Corrections, 684 F.3d 1157, 1171 (11th Cir. 2012) ("Even if we were to rule that the Supreme Court of Florida unreasonably applied clearly established federal law when it concluded that Morton's lawyers did not render deficient performance, Morton would not be entitled to relief. The Supreme Court of Florida reasonably applied clearly established federal law when it ruled that Morton failed to establish prejudice."); Jamison v. Warden, Chillicothe Correctional Inst., 3:09-CV-297, 2011 WL 4458775, at *1 (S.D. Ohio Sept. 23, 2011) ("the state court's holding on the issue of performance alone was sufficient to defeat Petitioner's ineffective assistance claim. Petitioner has not demonstrated that the state court's holding with respect to that first prong was contrary to or an unreasonable application of clearly established federal law. Therefore, even if the state court's decision with respect to the prejudice prong is deemed to be contrary to Supreme Court precedent, there is no basis for granting the requested relief.").

Petitioner argues that this Court should provide *de novo* review. However, even if we were to evaluate this Ground for Relief *de novo*, we would reach the same conclusion as the Superior Court, namely, that Petitioner could not establish prejudice on this record.

Petitioner argues that the prejudice he suffered is that his trial counsel's entire credibility was destroyed by telling the jury that witness Andre Drewery had testified to something that he had not specifically testified to. ECF No. 3 at 21 ("petitioner claims that this misleading statement; telling the jury they were presented with testimony that is clearly devoid of the transcript in this case, destroyed the credibility of the defense in its entirety thereby rendering the truth-determining process as unreliable due to the actions of trial counsel in a case with no overwhelming evidence of guilt, and that Petitioner Benjamin suffered actual prejudice as a result thereof."). We are not persuaded.

We begin with first principles. We note that Petitioner's conviction and sentence are presumed to be constitutional and valid. U.S. v. El-Amin, 343 F. App'x 488, 491 (11th Cir. 2009) ("the underlying [federal] conviction and sentence are presumed valid until vacated in a separate proceeding under 28 U.S.C. § 2255. . ."). See also Meyers v. Gillis, 93 F.3d 1147, 1151 (3d Cir. 1996) ("On collateral attack...., the state receives the presumption of regularity and all reasonable inferences.") (quoting Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993)); Schlette v. California, 284 F.2d 827, 833-34 (9th Cir. 1960)("A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."). Thus, the burden is clearly upon Petitioner to show that his conviction is unconstitutional or

illegal. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997)("On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."); Riggs v. Federal Bureau of Prisons, Civ. A. No. 5:06-cv-00687, 2007 WL 1655240, at *3 (S.D.W.Va., June 6, 2007)("The petitioner carries the burden of proving he is entitled to habeas corpus relief under 28 U.S.C. § 2241."). Petitioner has failed to carry that burden.

In the case at bar, rather than pointing to primary facts, Petitioner's whole argument regarding prejudice under this Ground is his pure speculation as to how the jury was allegedly impacted by their alleged awareness of his trial counsel's "misleading statement ... [which] destroyed the credibility of the defense in its entirety[.]" ECF No. 3 at 21. However, it is pure conjecture on Petitioner's part that the jury lost all credibility in his counsel because the jury in fact, knew of and accurately recalled in detail the testimony of Andre Drewery, which testimony occurred on Wednesday, April 7, 2010, State Court Record Trial Transcript at 18 (listing date of those proceedings as 4/7/2010) & Transcript at 261 (listing date of those proceedings as 4/8/2010) where Drewery's testimony occurred at pp. 205 - 43. We note that Drewery's testimony occurred on Wednesday, April 7, 2010 and the closing arguments did not occur until Tuesday, April 13, 2010 with 18 more witnesses taking the stand after Drewery had testified and before the closing arguments occurred. Petitioner's contention, in effect, that the jury remembered in detail Drewery's testimony, and accurately recalled that Drewery did not testify as Petitioner's counsel asserted, and, according to Petitioner, therefore necessarily concluded that Petitioner's attorney was intentionally misleading them is simply not persuasive to carry his burden in these federal habeas proceedings. In fact, it is equally plausible that the jury, not recalling the details of the testimony of Andre Drewery, concluded that Petitioner's attorney's

recounting of that testimony was accurate. Or, even if they thought it was inaccurate, they could reasonably conclude that Petitioner's counsel simply was mistaken in this minor aspect but was correct in her larger point that Petitioner did not argue with the victim about money, given the testimony by other witnesses to this same effect, which Petitioner's counsel accurately recounted. Because these factual scenarios are equally plausible and because we presume the constitutionality of Petitioner's conviction and sentence, that means Petitioner necessarily loses because he fails to establish that the jurors in fact lost all credibility in his counsel and therefore, in his entire defense, which is the very prejudice that Petitioner asserts herein. Because we presume the constitutionality of Petitioner's conviction, we presume that the jury was not so disposed toward Petitioner's counsel or his defense, and it is Petitioner's burden to prove otherwise. That all he can now offer is conjecture and supposition of the alleged effect (if any at all) on the jury, and, not primary facts, works to his detriment given that it is Petitioner's burden to establish the unconstitutionality of his conviction. This is because, as recently explained:

> a silent record supports a state court conviction in federal habeas proceedings. *Washington v. Sobina*, 509 F.3d 613, 621 (3d Cir. 2007) ("Silence in the record is insufficient to overcome that presumption" under 28 U.S.C. § 2254(e)(1)); *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences.... His [i.e., habeas Petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a heavy burden."). A silent state court record redounds to a habeas petitioner's detriment because the presumption of regularity or constitutionality of state court convictions and the presumptive correctness of factual findings under the AEDPA supply the necessary facts to the extent that they are not affirmatively present in the record. In other words, the presumption of regularity or of constitutionality attendant to state court convictions in federal habeas proceedings means that the federal habeas court presumes that what was required by the Constitution was done in the state courts and that what was forbidden by the Constitution was not done in the state court proceedings. It is

up to a federal habeas petitioner to affirmatively show to the contrary. This,
Petitioner has failed to do.

Hagan v. Fisher, No. 13-1566, 2016 WL 3645202, at *10 (W.D. Pa. June 30, 2016). Petitioner

herein affirmatively fails to demonstrate what effect if any, counsel's mistaken representation of

the state of the record had on the jury. That Petitioner fails to do so, works to his detriment and

requires that we deny him federal habeas relief on his Third Ground for Relief.[10]

### C. Ground Four Does Not Merit Relief.

In Ground Four, Petitioner complains that he was not afforded a hearing during the

PCRA proceedings in order to establish the ineffectiveness of his trial counsel during the closing

argument. See ECF No. 3 at 28 ("In denying Petitioner Benjamin's request for record

---

[10] That it may well be nigh impossible at this point for Petitioner to carry his burden herein to
show the prejudicial impact on the jury of his counsel's alleged ineffectiveness, is simply a
function of the limited role that federal habeas court performs in reviewing state court criminal
convictions, made even more limited by the enactment of AEDPA. Harrington v. Richter, 562
U.S. 86, 102–03 (2011) wherein the Court explained:

> If this standard is difficult to meet, that is because it was meant to be. As
> amended by AEDPA, § 2254(d) stops short of imposing a complete bar on
> federal-court relitigation of claims already rejected in state proceedings. Cf.
> Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)
> (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves
> authority to issue the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with this Court's precedents.
> It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard
> against extreme malfunctions in the state criminal justice systems," not a
> substitute for ordinary error correction through appeal. Jackson v. Virginia, 443
> U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring
> in judgment). As a condition for obtaining habeas corpus from a federal court, a
> state prisoner must show that the state court's ruling on the claim being presented
> in federal court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility for
> fairminded disagreement.

development the PA Superior Court ruled as follows: ... 'Finally, as to Appellant's contention that the PCRA court erred in dismissing his petition without a hearing ....'").

Ground Four cannot provide a basis for the granting of federal habeas relief in these federal habeas proceedings because such claims of errors in the course of PCRA proceedings cannot serve as a basis for granting the writ of habeas corpus. Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation. . . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'"); Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) ("alleged errors in collateral proceedings ... are not a proper basis for habeas relief from the original conviction."). Accordingly, Ground Four does not afford a basis for the granting of a writ of habeas corpus in these federal proceedings.

Petitioner also seemingly argues that because the state courts did not provide him an evidentiary hearing during the PCRA proceedings, this federal habeas Court should not give deference to the facts as found by the state courts. ECF No. 17 at 4 ("if this Honorable Court affords 'deference' to this state court conclusion (Petitioner Benjamin posits that this habeas Court should not)...."). We are not persuaded.

Petitioner is simply wrong on the state of the law post-AEDPA. See, e.g., Craft v. Iowa, 13CV117 EJM, 2015 WL 1304435, at *2 (N.D. Iowa Mar. 23, 2015), wherein the Court explained that:

> Nothing in § 2254(d)(2) "suggests [courts] defer to a state court's factual findings only if the state court held a hearing on the issue." *Cowans v. Bagley*, 639 F.3d 241, 246–48 (6th Cir. 2011) (according deference to state

court's fact finding on competence to stand trial despite lack of a hearing); *see also Mendiola v. Schomig*, 224 F.3d 589, 592–93 (7th Cir. 2000) (comparing pre-AEDPA version of section 2254 which required a hearing to trigger deference to state courts with post-AEDPA section 2254, which lacks any such requirement, and holding that "if the state court's finding is supported by the record, even though not by a 'hearing on the merits of [the] factual issues,' then it is presumed to be correct."). This court will defer to the Iowa courts' finding of facts, irrespective of whether a hearing occurred.

Accord Lambert v. Blackwell, 387 F.3d at 239 ("the extent to which a state court provides a 'full and fair hearing' is no longer a threshold requirement [post-AEDPA] before deference applies"); Valdez v. Cockrell, 274 F.3d 941 (5th Cir. 2001) (full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review); Mendiola v. Schomig, 224 F.3d 589 (7th Cir. 2000) (defendant must defeat presumption by clear and convincing evidence, also noting that § 2254(e) "omits any mention of a hearing. If a state court's finding rests on thin air, the petitioner will have little difficulty satisfying the standards for relief under § 2254. But if the state court's finding is supported by the record, even though not by a 'hearing on the merits of [the] factual issue,' then it is presumed to be correct."). Therefore, Petitioner has not established a basis for federal habeas relief.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). The Court concludes that jurists of reason would not find it debatable whether the Petitioner made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability should be denied.

## VI. CONCLUSION

For the reasons set forth herein, the Petition is denied. Because we find jurists of reason would not find the foregoing debatable, we deny a certificate of appealability.

BY THE COURT,

February 27, 2019

MAUREEN P. KELLY
UNITED STATE MAGISTRATE JUDGE

cc:    KRISTOPHER ERIC BENJAMIN
       KT-1994
       SCI Coal Township
       One Kelley Drive
       Coal Township, PA 17866

       All counsel of record via CM-ECF